ILLINOIS CENT. R. CO. *v.* BOARD OF SUP'RS OF ATTALA COUNTY.[*]

(In Banc.    Dec. 22, 1924.)

[102 So. 265.    No. 24167.]

TAXATION. *Presentation of claim for refund of erroneous tax payment to state auditor held not condition precedent to filing refund claim with supervisors.*

Section 6980, Hemingway's Code (section 4346, Code of 1906), is an additional method given to one who had erroneously paid a

tax, and is not a condition precedent to filing a claim with the board of supervisors for a refund of a county tax erroneously paid.

ETHRIDGE, J., dissenting.

---

*Headnote. Taxation, 37 Cyc., p. 1174.

APPEAL from circuit court of Attala county.
HON. T. L. LAMB, Judge.

Proceeding by the Illinois Central Railroad Company against the board of supervisors of Attala county. From an order dismissing the petition, plaintiff appeals. Reversed and rendered.

*May, Sanders & McLaurin,* for appellant.

There is no dispute about the facts, the petition of the railroad company for refund being conceded to be true, but the right to recover being denied to it as a matter of law by the board of supervisors in the first instance and by the circuit court on an appeal from the order of the Board. Chapter 114, Laws of 1922, fixed the state and county tax rate for that year. The Illinois Central Railroad Company was required to pay on its property for county purposes nine and one-half (9½) mills, which we contend was one and one-half (1½) mills more than the statute authorized the board of supervisors to levy, the total of the unlawful excess thus exacted of the railroad company being twelve hundred three dollars and ninety-one cents ($1203.91). The statute above quoted limits the county tax levy to eight mills with certain exceptions, but paupers' support and repair maintenance of courthouses are not among the things excepted from the general provisions of the statute; hence we submit that it is plain from the language of the statute that the one. mill pauper and one-half mill maintenance tax, being in excess of the eight mills otherwise levied, was clearly an unlawful levy.

In the levying of taxes the board of supervisors, of course, could exercise only such power as was conferred upon them by the legislative act.

We do not understand section 6980, Hemingway's Code and section 4346, Code of 1906, as providing the exclusive remedy for the enforcement of a claim to recover taxes which have been wrongfully and illegally collected. As we construe the said Code section, it confers an additional remedy upon the taxpayer in such cases and imposes a duty upon the auditor of public accounts. But the remedy is optional, the taxpayer may resort to the remedy, section 311, Code of 1906. *Davis* v. *Lamar County,* 107 Miss. 311. Construing the two sections together and giving due regard to the language employed in section 6980, Hemingway's Code, we think the court will perceive that the taxpayer is not required to proceed in the manner provided by the latter section. The opening line of the section, which is not modified throughout the section, is, so far as its mandatory character is concerned, aimed directly at the auditor.

If the language of the application for refund was in general terms and did not specify in detail the assessed valuation of the property and other details which good pleading might have required, its sufficiency could have been objected to for want of particularity. But this defect could be waived and was waived as doubtless the board of supervisors and their attorney were fully informed of the details of the claim and did not desire or require greater particularity of the pleader.

We think that it was clearly within the discretion of the board of supervisors to dispense with the production of the tax receipts. It may be that the tax receipts were informal or had been lost or destroyed, but the tax receipts are not the only evidence of the payment of the taxes. *Perret* v. *Borries,* 78 Miss. 934; *Dodds* v. *Marx,* 68 Miss. 443.

*F. S. Harmon,* Assistant Attorney-General, for appellee.

"Does section 6980, Hemingway's Code, section 4346, Code of 1906, apply to the present case? In other words, does this section require, or is it a condition precedent to refund, that the claim for county taxes alleged to be levied without authority of law and paid, have to be referred to the auditor for an audit and to the attorney-general for an opinion as to its legality, before the board of supervisors can entertain the application for refund?" This section is here applicable, and the claim must be referred to the auditor for an audit and to the attorney-general for an opinion before the board of supervisors can entertain the application for refund. A careful study of decided cases seems to sustain our position here. No case has come to our attention in which a claim for a tax refund was made before the board of supervisors under section 3684 (311), nor do cases cited in brief of appellant support his contention.

We have sought to show, first, that this is the legislative intent in the premises, and second, that a study of the decided cases indicates that the claims which have been presented to the board of supervisors have in all the instances which have come to our attention been claims arising directly in contract or in tort, or having some special feature distinguishing them from claims for refunds, such as the one at bar. We turn now to the consideration of a case which seems persuasive authority, if not a conclusive one, in support of our argument here.

In *Pearl River County* v. *Lacey Lumber Company,* 86 So. 755, the Lacey Lumber Company filed a petition for mandamus in the circuit court of Pearl River county alleging an improper and void assessment and an erroneous payment made thereunder after protest, and alleging further that application was made to the auditor and to the attorney general for a refund under section 6980, and that the auditor and attorney-general approved and allowed the application for refund and refunded the

state taxes in question, and certified to the board of su-
pervisors the amount which the county should refund,
but that the board of supervisors refused to allow the
amount certified and rejected and disallowed the claim.
There was a plea of general issue interposed to this pe-
tition which, of course, denied all the material allega-
tions of the petition. There was no evidence introduced
and the decision of the supreme court was that, "with the
general issue denying the allegations of the petition, it
was error to proceed to judgment or to grant a writ when
the allegations were thus denied." The court further
said that "the denial was effective to dispute the alle-
gations that the claim had been presented to the auditor
and the attorney-general . . ." It will thus be seen
that the actual decision of this case went off on the
pleadings. We have stated this by way of necessary pre-
liminary so as to indicate at once the *ratio decidendi* of
the decision.

The narrow question is whether the legislature in-
tended to make approval by the auditor and attorney-
general a condition precedent to any further steps to a
refund. The case cited is a strong bulwark in support
of our contention that this was the legislative intent.
The history of the statutes and the circumstances sur-
rounding the enactment of section 6980 add weight to
the view here expressed, and the host of cases arising
under section 311 (3684) when examined, indicate that
it is claims arising in contract or in tort that have been
taken directly to the board of supervisors under this
statute.

Permit us to call attention to yet another considera-
tion. The board of supervisors has in its hands a large
percentage of power with respect to the approval of the
assessment rolls and the levying of the tax. To allow
the same body to turn around and grant refunds promis-
cuously hardly seems sound policy. Without reflecting
upon any members of any particular board, it is quite
evident that the placing in the hands of the same group
of so much power could easily result in gross inequali-

ties, and in the doing by indirection through the refund of taxes, that which is strictly forbidden directly in the assessment and levying of same.

"It is necessary for the petition for refund to set forth the assessed valuation of the property upon which the alleged taxes are paid as well as to state the sum of money paid therefor?" While it would have been better for the petition to set forth the assessed valuation, we agree with counsel for appellant that a failure so to do did not render the petition too defective for action to be taken thereon.

"Can the board of supervisors dispense with the production of the necessary evidence to show the existence of the claim and the right to the relief asked for? In other words, can the board of supervisors by agreement consent to a liability against the county treasury?" We reach the conclusion arrived at by counsel for appellant with respect to this question.

SYKES, J., delivered the opinion of the court.

The appellant railroad company filed with the board of supervisors of Attala county a petition alleging in substance that the board had assessed it with an *ad valorem* tax levy of eight mills, and in addition thereto with a one mill *ad valorem* tax for pauper support and a half-mill *ad valorem* tax for repair and maintenance of the courthouse; that these taxes were duly paid by it, but the one and one-half-mill taxes above referred to, amounting to one thousand, two hundred three dollars and ninety-one cents, were paid under protest to the tax collector of the county, which protest was duly noted on the margin of the tax receipt; that this one and one-half-mill levy was in excess of the amount the board was authorized to levy under the law and therefore void; and that the petitioner was entitled to have this amount refunded. This petition was rejected by the board of supervisors, and a bill of exceptions from this order of

the board was duly taken. The order of the board of supervisors rejecting the claim in part reads as follows:

"Said petition and claim for refund came on to be heard on the petition and claim, and the board having considered same, and having taken the statements in said petition in regard to the payment of the tax, and recitation of the order of the board levying tax, and all matters and things in the way of evidence touching same both for the claim and for the board without requesting the actual production of receipts for taxes, and orders of the board, having taken the allegations of said petition as true as stated in said petition," etc.

The cause was then heard in the circuit court on this bill of exceptions, and the order of the board of supervisors was sustained, and the petition of the appellant dismissed. From which judgment of the circuit court, this appeal is here prosecuted.

On this petition and order of the board of supervisors, we are of the opinion that the board of supervisors had the right to treat the allegations of the petition as being true. The petition referred to the order of the board making the tax levy of eight mills and the additional one and one-half-mill levy herein complained of. It specifically referred to the payment of this alleged tax under protest and gave the number of the receipt. We assume that the board of supervisors knew what was contained in the tax receipt and in its order levying the tax. Under these circumstances we are of the opinion that the board could dispense with any proof of these matters.

We are also of the opinion that it was not a condition precedent to the presentation of this claim to the board of supervisors that it first be presented to the auditor of public accounts for investigation and for submission to the attorney-general for his inspection and approval, as provided in section 6980, Hemingway's Code (section 4346, Code of 1906). This section gives to one who has erroneously paid a tax an additional method of getting his claim first allowed by the auditor. It does not intend

Sept., 1924] Illinois Cent. R. Co. *v.* Board of Sup'rs. 415

137 Miss.]                    Opinion of the Court.

to prescribe an exclusive method of doing so. The only mandatory language used in the first part of this section is that which makes it the duty of the auditor to make a careful investigation. Nowhere does it make it the duty of the taxpayer to present his claim to the auditor. This statute was construed in the case of *Pearl River County* v. *Lacey Lumber Co.,* 124 Miss. 85, 86 So. 755. The lumber company in that case had its claim properly allowed under this section. The court there held that the approval of this claim by these officers does not make it mandatory upon the treasurer of the county board to refund if he believes there is a good defense to the claim. The exact question here discussed was not presented to the court in that case for decision, because there the lumber company had its claim audited and allowed as provided in this section.

This claim is governed by section 3684, Hemingway's Code (section 311, Code of 1906), which reads as follows:

"A person having a just claim against any county shall first present the same to the board of supervisors thereof for allowance; and, if the board shall refuse to allow it, may appeal from the judgment of the board to the circuit court, or may bring suit against the county; and, in either case, if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therefor."

In construing this section of the Code, this court has uniformly held that it applies to all kinds of claims, whether in contract or in tort against the county. *Davis* v. *Lamar County,* 107 Miss. 827, 66 So. 210; *Jackson* v. *Monroe County,* 120 Miss. 125, 81 So. 787; *George County* v. *Bufkin,* 117 Miss. 844, 78 So. 781; *Board of Supervisors of Lawrence County* v. *City of Brookhaven,* 51 Miss. 68. This claim for an erroneous collection of taxes falls squarely within this section.

The appellant company had a right to proceed as an original proposition under either of these two sections. If the legislature had meant to make the procedure out-

lined in section 6980 the exclusive method for getting a refund of taxes, we think it would have amended section 3684 by stating in so many words that this section was not applicable to claims for a refund of taxes.

There appears upon the face of the petition and the order of the board of supervisors therein referred to a levy of eight mills on the dollar for general county purposes; one mill for pauper support and one-half mill for repair and maintenance of courthouse. Chapter 114, Laws of 1922, authorizes boards of supervisors to levy taxes at a rate not exceeding eight mills on the dollar, exclusive of county and district road tax, common school tax, and agricultural high school and other school tax, exclusive of the tax rate fixed in section 1 of the act. Section 1 of the act fixes the state *ad valorem* taxes at eight mills on the dollar for the year 1922 and 1923. It is therefore perfectly apparent that under this act these additional assessments amounting to one and one-half-mills are void. They are not included within any of the exceptions contained in this act. Since all this appears upon the face of the pleadings, it was error for the board of supervisors and for the circuit court to have disallowed this claim. .

The judgment of the lower court is reversed, and judgment will be entered here in favor of appellant for the sum of one thousand two hundred three dollars and ninety-one cents.

*Reversed, and judgment here for appellant.*

ETHRIDGE, J. (dissenting).

I am unable to agree with my brethren in this case for two reasons:

First, the board of supervisors, being trustees for the public and charged with the duty of acting for the public, cannot waived the production of evidence of a claim presented. Before the funds of a county can be paid out, satisfactory evidence of the plaintiff's right to the money

must be produced. The petition here is not an agreed statement of facts, if the board has power to agree to the facts, which is not here involved, but is a mere statement that the board, taking the allegations of the petition to be true, disallows the claim. It is more in the nature of a demurrer to the petition than an agreement of facts. The board cannot allow claims against the county on a mere petition with no other evidence, and it has no right to agree so as to bind the county, where there is no evidence produced before it. The courts do not take judicial notice of the acts of boards of supervisors, and there was no evidence in the circuit court in support of the petition.

The second proposition: Section 4346, Code of 1906 (section 6980, Hemingway's Code), is the sole authority of the board of supervisors, or any one else, to refund moneys erroneously paid into the public treasury. By this section it is provided that:

"The auditor of public accounts is hereby authorized and required to make a careful investigation of all claims presented for moneys paid for *ad valorem* or privilege taxes not due, . . . or if he shall find that any taxes or moneys have been, or may hereafter be, erroneously paid therefor into the treasury of the state, county or levee boards, he shall audit such claims against each separate fund in proportion to the amount paid over to such fund in each case, and he shall submit such audited claim with the voucher and evidences on which such claim is based, to the attorney general for his inspection and approval, and if the attorney general be of the opinion that such claims should be paid he shall approve the same," etc.

It then provides for the issuance of the state's warrants for the state's part of any tax so erroneously paid into the treasury and for a certificate to the board of supervisors as to the county's portion of the taxes to so refunded.

Section 4347, Code of 1906 (section 6981, Hemingway's Code), provides for the repayment of double tax pay-

137 Miss.—27,

ments. Section 4348, Code of 1906 (section 6982, Hemingway's Code), provides for overpayments by sheriffs to be refunded. Section 4349, Code of 1906 (section 6983, Hemingway's Code), provides that erroneous privilege taxes be refunded. In the absence of these statutes there would be no power in the board of supervisors to pay out money erroneously paid into the county treasury.

Section 311, Code of 1906 (section 3684, Hemingway's Code), cited in the majority opinion, is not a statute conferring any authority whatever on the board of supervisors to pay out any money. It is a condition precedent and imposed upon the person claiming any liability against the county. The authority of the board of supervisors is embraced in other sections of the Code, and unless some other section can be found authorizing the board of supervisors to pay out the county's funds, it cannot do so under this section. This section is not an enabling statute but is a restricting statute. It is true that before any suit can be brought the board must first be given the right to pass upon the matter and investigate it, but it cannot by this section alone pay anything out of the treasury.

It is manifest to my mind that the purpose of the requirements of section 4346, Code of 1906 (section 6980, Hemingway's Code), is to have competent officers to audit and investigate the claims, and a competent legal adviser to pass upon the legality of the claims before they are allowed. It is well known that in many counties the county auditors and legal advisers are not equal in capacity and skill and learning to the state auditor and the attorney-general. The section would also secure uniform practice in allowances.

It is true that the action of the auditor of public accounts and of the attorney-general in passing on claims under said section is not final, but the board of supervisors may have the questions judicially determined if they be of the opinion that the auditor of public accounts

and the attorney-general are in error either as to the law or facts.

Section 4346, Code of 1906 (section 6980, Hemingway's Code), in my opinion was intended to require all refunds out of the public treasury to be investigated by these competent officers. The paying of a tax under protest would enable the party paying to sue the collector, and, when a tax is paid under protest, the tax collector is given notice that its legality may be contested, and that he pays the fund into the treasury at his peril, but payment under protest does not give the taxpayer the right to sue the county, and the only authority for the repayment is section 4346, Code of 1906 (section 6980, Hemingway's Code).